IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| GIANNA HUNNICUTT<br>1844 Lipponcott Avenue<br>Findlay, OH 45840<br><br>    Plaintiff,<br><br>  v.<br><br>FRESH ENCOUNTER, INC.<br>c/o Michael S. Needler<br>317 W. Main Cross Street<br>Findlay, OH 45840<br><br>    Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO.<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR DAMAGES<br>AND REINSTATEMENT**<br><br>**(Jury demand endorsed herein)** |

Plaintiff, Gianna Hunnicutt, by and through undersigned counsel, as her Complaint against Defendant, states and avers the following:

### THE PARTIES

1. Hunnicutt is a resident of the city of Findlay, Hancock County, state of Ohio.

2. Fresh Encounter, Inc., d/b/a Apple-A-Day, ("Fresh Encounter") is an Ohio corporation that conducts business in Findlay, Ohio.

3. During all times material to this Complaint, Fresh Encounter was an "employer" within the meaning of 42 U.S.C. § 2000e(b).

4. During all times material to this Complaint, Fresh Encounter was an "employer" within the meaning of R.C. § 4112.01(A)(2).

### JURISDICTION & VENUE

5. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Hunnicutt is alleging a Federal Law Claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.



6. This Court has supplemental jurisdiction over Hunnicutt's state law claims pursuant to 28 U.S.C. § 1367, as Hunnicutt's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution

7. All material events alleged in this Complaint occurred in county of Hancock.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

9. Within 300 days of the conduct alleged below, Hunnicutt filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2020-01985 against Fresh Encounter.

10. On January 28, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Hunnicutt regarding the Charge of Discrimination brought by Hunnicutt against Fresh Encounter.

11. Hunnicutt received her Right to Sue letter from the EEOC in accordance with 29 U.S.C. §§ 621 *et seq.* which has been attached hereto as Plaintiff's Exhibit A.

12. Hunnicutt has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

13. Hunnicutt has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

14. Hunnicutt is a former employee of Fresh Encounter.

15. Hunnicutt is multiracial.

16. Hunnicutt is African American.

17. Fresh Encounter hired Hunnicutt on or around January 20, 2019.

18. Fresh Encounter employed Hunnicutt as a sales representative.

19. At all times relevant, Fresh Encounter operated a store within the Great Scot grocery store, located on Broad Avenue in Findlay, Ohio.

20. Hunnicutt was hired by Janet Liskolesar, a general manager at Fresh Encounter.

21. During Hunnicutt's employment, Fresh Encounter's floor manager was Holly Lenhart.

22. Lenhart is Caucasian.

23. After Hunnicutt's hiring, around March 2019, Adam Rader became the general manager at Fresh Encounter.

24. Rader is, or appears to be, Caucasian.

25. During Hunnicutt's employment Dallas Sterling worked at Great Scot as a pharmacist.

26. Sterling is Caucasian.

27. During Hunnicutt's employment, Sterling was Rader's direct supervisor.

28. Fresh Encounter is a health-food store that sells products from both local and national vendors.

29. It is commonplace for Fresh Encounter sales representatives to not only sell Apple-A-Day products to customers, but also at times, personal or other third-party products.

30. One of Fresh Encounter's former sales representatives, Gina, would sell personally-made products at the store, including homemade treats and granola.

31. Gina is Caucasian.

32. Lenhart was the floor manager during the time Gina was selling her own personal products.

33. During the times Gina sought to sell her own personally-made products to customers, Lenhart never received any complaints from management about her conduct nor was she ever told to stop Gina from engaging in such conduct.

34. Lenhart was never directed to, nor did she ever hear or witness anyone, question Gina about proper labels for her products, whether she had a vendor's license or ask her for any type of documentation.

35. While Lenhart was the floor manager, there was a sales employee, Stacy, who was allowed to sell her own personal products at the same Fresh Encounter location.

3

36. Stacy is Caucasian.

37. Stacy would bring in and sell personal products such as brownies and other items.

38. Lenhart never witnessed, heard of, nor was she ever asked to question Stacy about documentation related to her personal products being sold at the store.

39. During her employment, Hunnicutt developed her own line of products, including essential oil rollers, and different herbs and oils; and similar products.

40. Hunnicutt, like the other sales representatives, sought to sell her products at the Fresh Encounter store.

41. Hunnicutt informed Lenhart that she wanted the opportunity to sell her personal products at the store.

42. Lenhart, based on past experiences with other employees, was fine with Hunnicutt's request.

43. Lenhart went to Rader to get approval for Hunnicutt to sell her personal products.

44. At this time, Rader expressed no objection to Hunnicutt selling her products.

45. Hunnicutt received approved to sell her personal products at the store.

46. In or around September 2019, Hunnicutt began bringing in her products and started selling them at the store.

47. After about a week or so of Hunnicutt selling her personal products, Rader texted Hunnicutt asking her whether she had appropriate documentation allowing her to sell products in the store.

48. Hunnicutt informed Rader she had all of the necessary paperwork.

49. At all relevant times, Hunnicutt was a licensed vendor.

50. At all relevant times, some of the Caucasian employees who sold personal products at the store were not licensed vendors.

51. Hunnicutt inquired with Rader whether he was similarly checking with all of the other sales representatives who were selling their own personal products at the store, or just her.

52. Hunnicutt believed Rader and Fresh Encounter was singling her out based on her race.

53. Rader did not have answer for Hunnicutt's question about being singled out.

54. Upon information and belief, every other sales employee who was selling personal products at the store was Caucasian.

55. Lenhart learned that Rader was questioning Hunnicutt about selling her products and asking her about paperwork for selling those products.

56. This was the first time Lenhart had ever seen or heard Rader or anyone at Fresh Encounter question one of their employees about selling their personal products, especially when they had already been approved to do so.

57. Lenhart questioned Rader as to why he was asking Hunnicutt about having certain paperwork to sell products when he had never done so for any other employees.

58. Lenhart believed Rader was targeting Hunnicutt based on her race.

59. As a result of Rader's conduct, Hunnicutt sought to file a grievance against him.

60. Hunnicutt spoke with Sterling about filing a grievance against Rader for his discriminatory conduct.

61. Hunnicutt told Sterling she felt Rader was singling her out and discriminating against her based on her race.

62. Sterling did not investigate Hunnicutt's discrimination complaint.

63. Sterling did not escalate Hunnicutt's discrimination complaint.

64. Sterling did not direct Hunnicutt to speak with human resources regarding her discrimination complaint.

65. Sterling told Hunnicutt that there was no grievance process.

66. Sterling told Hunnicutt that he did not believe Rader's conduct was discriminatory.

67. Sterling told Hunnicutt that he directed Rader to question Hunnicutt about her having paperwork to sell products at the store.

68. Hunnicutt expressed to Sterling that she believed this conduct, whether directed by Sterling or Rader, was discriminatory based on her race.

69. Around this same time, Lenhart expressed concern to Sterling that Hunnicutt, as an African American/multiracial individual, was being singled out or treated differently.

70. Lenhart stated to Sterling that, "if we were going to pull all of Ms. Hunnicutt's items, were we going to do the same for other employees' personal products?" Sterling's answer was "No."

71. Within a few weeks after her discrimination complaints, Fresh Encounter terminated Hunnicutt on October 24, 2019.

72. Fresh Encounter terminated Hunnicutt for the purported reason that she was sleeping at work.

73. Hunnicutt was not sleeping at work.

74. No one at Fresh Encounter witnessed Hunnicutt sleeping at work.

75. Alternatively, if Hunnicutt was asleep at any point while at work, it was during her scheduled break.

76. If Hunnicutt was on break, she was not on the clock.

77. Fresh Encounter's purported reason for termination is a pretext for discrimination.

78. Fresh Encounter's purported reason for termination is a pretext for retaliation.

79. On the same day, October 24, 2019, Fresh Encounter terminated Lenhart.

80. Fresh Encounter terminated Lenhart for supporting Hunnicutt's opposition to race discrimination.

**COUNT I: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e-2, *et seq*.**

81. Hunnicutt restates each and every prior paragraph of this Complaint as if it were fully restated herein.

82. Hunnicutt is a member of a statutorily protected class based on her race under Title VII.

83. Defendant treated Hunnicutt differently than other similarly situated employees based on her race.

84. Defendant harassed Hunnicutt based on her race.

85. Defendant discriminated against Hunnicutt on the basis of her race.

86. Defendant terminated Hunnicutt's employment based on her race.

87. Defendant's discrimination against Hunnicutt based on her race violates Title VII.

88. Hunnicutt suffered emotional distress as a result of Defendant's conduct and is entitled emotional distress damages pursuant to Title VII.

89. As a direct and proximate result of Defendant's conduct, Hunnicutt suffered and will continue to suffer damages.

## COUNT II: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01, *et seq*.

90. Hunnicutt restates each and every prior paragraph of this Complaint as if it were fully restated herein.

91. Hunnicutt is a member of a statutorily protected class based on her race under R.C. § 4112.01, *et seq*.

92. Defendant treated Hunnicutt differently than other similarly situated employees based on her race.

93. Defendant harassed Hunnicutt based on her race.

94. Defendant discriminated against Hunnicutt on the basis of her race.

95. Defendant terminated Hunnicutt's employment based on her race.

96. Defendant's discrimination against Hunnicutt based on her race violates R.C. § 4112.01, *et seq.*

97. Hunnicutt suffered emotional distress as a result of Defendant's conduct and is entitled emotional distress damages pursuant to R.C. § 4112.01, *et seq*.

98. As a direct and proximate result of Defendant's conduct, Hunnicutt suffered and will continue to suffer damages.

## COUNT III: RETALIATION IN VIOLATION OF 42 U.S.C. 2000e-3(a)

99. Hunnicutt restates each and every prior paragraph of this Complaint as if it were fully restated herein.

100. As a result of the Defendant's discriminatory conduct described above, Hunnicutt complained about the race discrimination and disparate treatment she was experiencing.

101. Hunnicutt complained to Rader and Sterling about the race discrimination and disparate treatment she was experiencing.

102. Subsequent to Hunnicutt reporting race discrimination to Defendant, she suffered adverse actions.

103. Subsequent to Hunnicutt reporting race discrimination to Defendant, she was not allowed to sell her personal products while Caucasian employees were allowed to do so.

104. Subsequent to Hunnicutt reporting race discrimination to Defendant, she lost income as a result of not being allowed to sell her personal products in the store.

105. Subsequent to Hunnicutt reporting race discrimination to Defendant, she was terminated from her employment.

106. Defendant's actions were retaliatory in nature based on Hunnicutt's opposition to the unlawful discriminatory conduct.

107. Hunnicutt suffered emotional distress as a result of Defendant's conduct and is entitled emotional distress damages pursuant to Title VII.

108. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Hunnicutt, she suffered and will continue to suffer damages.

## **COUNT IV: RETALIATION IN VIOLATION OF R.C. § 4112.02(I)**

109. Hunnicutt restates each and every prior paragraph of this Complaint as if it were fully restated herein.

110. As a result of the Defendant's discriminatory conduct described above, Hunnicutt complained about the race discrimination and disparate treatment she was experiencing.

111. Hunnicutt complained to Rader and Sterling about the race discrimination and disparate treatment she was experiencing.

112. Subsequent to Hunnicutt reporting race discrimination to Defendant, she suffered adverse actions.

113. Subsequent to Hunnicutt reporting race discrimination to Defendant, she was not allowed to sell her personal products while Caucasian employees were allowed to do so.

114. Subsequent to Hunnicutt reporting race discrimination to Defendant, she lost income as a result of not being allowed to sell her personal products in the store.

115. Subsequent to Hunnicutt reporting race discrimination to Defendant, she was terminated from her employment.

116. Defendant's actions were retaliatory in nature based on Hunnicutt's opposition to the unlawful discriminatory conduct.

117. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

118. Hunnicutt suffered emotional distress as a result of Defendant's conduct and is entitled emotional distress damages pursuant to R.C. § 4112.02(I).

119. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Hunnicutt, she suffered and will continue to suffer damages.

9

## **DEMAND FOR RELIEF**

WHEREFORE, Hunnicutt respectfully requests that this Honorable Court grant the following relief:

(a) An order requiring Defendant to reinstate Hunnicutt;

(b) An award against Defendant of compensatory and monetary damages to compensate Hunnicutt for lost wages, lost benefits,, liquidated damages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorney's fees and non-taxable costs for Hunnicutt's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Fred M. Bean*
Fred M. Bean (0086756)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Blvd, Ste 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: Fred.bean@spitzlawfirm.com

*Attorney for Plaintiff*

## **JURY DEMAND**

Plaintiff Gianna Hunnicutt demands a trial by jury by the maximum number of jurors permitted.

*/s/ Fred M. Bean*
Fred M. Bean (0086756)
**THE SPITZ LAW FIRM, LLC**